990 F.2d 1377
 301 U.S.App.D.C. 107
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
David R. BRODERDORF, Petitioner,
v.
Barry Lambert HARRIS, Acting Administrator, Federal Aviation
Administration, and National Transportation Safety
Board, Respondents.
 No. 92-1076.
 United States Court of Appeals, District of Columbia Circuit.
 April 6, 1993.
 
 Before: RUTH B. GINSBURG, WILLIAMS and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was considered on the record from the National Transportation Safety Board and on the briefs filed by the parties and arguments of counsel. After full review of the case, the court is satisfied that appropriate disposition of the appeal does not warrant an opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum it is
 
 
 2
 ORDERED and ADJUDGED that the case is remanded to the Board.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Petitioner David R. Broderdorf appeals from a National Transportation Safety Board decision finding that he had violated FAR Sections 135.3 and 135.5 by unlawfully operating passenger and cargo-carrying flights for compensation or hire through Buffalo Express Airlines, Inc. between January and August 1987 following the revocation of its Part 135 operating certificate. See NTSB Decision, Appellant's Appendix ("A.A.") 733-40. The Board's decision reversed a decision of ALJ Joyce Capps, who found that Broderdorf did not have operational control over any of the flights flown in violation of Part 135. See ALJ Decision, A.A. 728-29.
 
 
 5
 Broderdorf questions whether substantial evidence supports the Board's decision. But before we can readily assess such a claim, and indeed independently, we must have before us a decision that articulates the Board's position coherently. Here, perhaps in part because the Board shifted the focus of the proceeding from the 97 flights originally charged as Broderdorf's violations to a mere seven flights, the Board offers no such articulation. We therefore remand to the NTSB for more particular fact-findings and clearer reasoning.
 
 
 6
 A few troubling aspects of the Board's decision merit special mention. First, at key parts of its decision allocating responsibility for the flights to Broderdorf, the Board explains that alternative persons could not possibly be responsible because their control over the flights would have violated the Board's regulations. Thus, in explaining why Broderdorf must have been in control over the three round trips from Buffalo to destinations in Canada, the Board explained that "[i]t is inconceivable that these flights were conducted under the control of AMI, as AMI did not have the requisite operations specifications or authority to operate in Canada." NTSB Decision at 5, A.A. 737. See also id. at 738 (aircraft owners could not have been responsible as there is no evidence that they possessed the requisite authority), id. at 739 (neither aircraft owners nor customer could have arranged flight as there is no evidence of adequate authority); Order Denying Reconsideration, A.A. 741, 743 (same argument). If that reasoning supports exculpating the alternative flight controllers, one would expect it equally to exculpate Broderdorf, as he too lacked authority. Obviously lack of Part 135 authority proves nothing, for even absent such authority, AMI, BEA, Cadwalader, Broderdorf, some other party, or some combination thereof could have had operational control over the flights to Canada. So much for the core of the Board's reasoning.
 
 
 7
 Another troubling aspect of the Board's decision is the implicit assumption underlying all of its reasoning that Broderdorf can be deemed the alter ego of BEA throughout the period in which unauthorized Part 135 flights were being flown. While Broderdorf appears to have been a driving force behind BEA's operations, the Board must explain more clearly why other people--most notably Peter Horn, the president of BEA after early 1987, see A.A. 417-18--might not have been the ones with operational control over the seven unauthorized flights on which the Board relies. In the absence of a more sufficient explanation why any flight authorized by BEA necessarily was under the operational control of David Broderdorf, the seven unauthorized flights on which the Board relies provide questionable support for the Board's revocation.
 
 
 8
 Finally, the Board may wish to reconsider whether revocation of Broderdorf's Part 135 authorization is justified if Broderdorf is shown to have had operational control over only a fraction of the ninety-seven flights the FAA originally claimed that he unlawfully operated. Perhaps the Board will decide that even a single unauthorized flight is enough to merit revocation, a determination that will warrant substantial deference if challenged in this court. Nonetheless, the Board should explain its position on revocation more clearly on remand.
 
 
 9
 In remanding, we make clear that we take no position on the question whether the Board on remand will be able to point to substantial evidence of Broderdorf's operational control over the seven flights cited. In addition, the Board is free to consider issues its decision left unaddressed--e.g., whether the ALJ erred in determining that Broderdorf did not have operational control over the ninety other unauthorized flights that the FAA originally alleged were attributable to Broderdorf.
 
 
 10
 For the reasons offered, remand to the Board is appropriate.